**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EILEEN MAYFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **No. 03-cv-2234** |
| | ) | |
| MONTGOMERY COUNTY | ) | |
| CORRECTIONAL FACILITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM OPINION AND ORDER**

RUFE, J.                                                    **July 2, 2008**

Before the Court is Defendants County of Montgomery, Julio Algarin, and Lawrence Roth's Partial Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's Response in Opposition. Defendants assert that Plaintiff's claims alleging violations of 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986, which are not set out as separate counts in the Amended Complaint, as well as Count III of the Complaint alleging malicious prosecution, should be dismissed for failure to state a claim. For the reasons that follow, the Court will grant Defendants' Motion in part and deny in part.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

As this matter is before the Court on a motion to dismiss, we recite the facts as alleged in the Amended Complaint and assume they are true for the purpose of this motion.[1] Plaintiff, Eileen Mayfield, was a correctional officer at the Montgomery County Correctional Facility

---

[1] E.g., Rogers v. Am. Can Co., 305 F.2d 297, 318 (3d Cir. 1962).

("MCCF") from 1982 until October 19, 2000.   On August 9, 2000, Plaintiff filed a dual administrative complaint with the Pennsylvania Human Relations Committee ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging sexual harassment and hostile work environment against then Deputy Warden Julio Algarin ("Algarin").   Defendant Lawrence Roth ("Roth") was the Warden of MCCF at all times relevant to this lawsuit.

Plaintiff informed Roth and Algarin on or about August 17, 2000 that she had filed a PHRC/EEOC complaint against Algarin.   Algarin summoned Plaintiff to his office on or about September 12, 2000 and begged Plaintiff to withdraw her administrative complaint, promising to discontinue all future sexual harassment against her.   Plaintiff refused, and Algarin responded, "Well, I got to do what I got to do."[2]  Defendant Roth also summoned another correctional officer, Plaintiff's partner, to his office and suggested that he should persuade Plaintiff to drop her PHRC/EEOC complaint, stating that "criminal charges could be involved."[3]   When Plaintiff's partner indicated that he thought the criminal charges would be against Algarin, Defendant Roth replied, "[n]o, the charges would be against Mayfield."[4]

Algarin, Roth and other MCCF employees acted in concert, bribing MCCF inmates to fabricate criminal charges of sexual misconduct against Plaintiff for the purpose of injuring her and dissuading her from pursuing her administrative complaint.   Plaintiff alleges Defendants Roth and Algarin conspired to injure and intimidate Plaintiff because of her gender.   Criminal charges were initiated against Plaintiff by MCCF inmates, and a trial ensued in the Montgomery County

---

[2] Am. Compl. ¶ 17.

[3] Id. ¶ 19.

[4] Id.

Court of Common Pleas in October 2004.  The basis of the criminal case against Plaintiff, and the evidence asserted in support thereof, was contrived and false, and known to be so by Defendants Roth and Algarin.  Despite repeated demands to produce exculpatory evidence in their possession, Defendants Roth and Algarin refused and destroyed exculpatory evidence that Plaintiff sought to support her defense in the criminal proceedings.  Defendants also intimidated potential witnesses in the criminal matter, warning them to "stay out of the Mayfield matter."[5]  The criminal trial against Plaintiff resulted in a hung jury.  Electing not to re-try Mayfield, the District Attorney of Montgomery County thereafter moved to *nolle prosequi* the case, which the state court granted.[6]

Simultaneous with the criminal prosecution pending against her, Plaintiff was issued a "Right to Sue" letter by the EEOC, and she filed the instant matter in this Court on April 9, 2003, filing a two-count Complaint; one count alleged sexual harassment and discrimination in violation of Title VII, and the other count alleged sexual harassment and discrimination in violation of the Pennsylvania Human Relations Act.[7]  An Answer and Affirmative Defenses were filed, and, upon request of the parties, this case was placed in civil suspense pending resolution of the state court criminal case against Plaintiff.  After the state court criminal proceedings were terminated, a scheduling conference was held on February 2, 2006 and trial was set for trial in January 2007.  At the request of the parties, an Amended Scheduling Order was issued on June 13, 2006 and trial was rescheduled for March 2007.  With leave from the Court, Plaintiff filed an Amended Complaint on July 9, 2007, naming as Defendants Montgomery County, Lawrence Roth, Julio Algarin, and other

---

[5] Id. ¶ 30.

[6] Am. Compl. ¶ 40.

[7] Comp. ¶¶

defendants who have since been voluntarily dismissed from this action.[8]  The Amended Complaint asserts claims of gender discrimination and sexual harassment in violation of Title VII and the PHRA, malicious prosecution in violation of the First, Fourth, Sixth and Fourteenth Amendments, as well as violations of 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986.   Before the Court is Defendant's Motion to Dismiss in Part Plaintiff's Amended Complaint.

## II.   DISCUSSION

### A.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations in the complaint, draw all reasonable inferences therefrom, and view them in the light most favorable to the plaintiff.[9]  The United States Supreme Court has recently clarified this standard of review, explaining that in order to survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[10]  A court may grant a 12(b)(6) motion only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved."[11]

### B.  Malicious Prosecution Claim

Defendants assert that Plaintiff's malicious prosecution claim alleges conclusory

---

[8] By the March 14, 2008 Order of this Court, Defendants Timothy Woodward, First Assistant District Attorney of Montgomery County, and Joseph DeAngelo, a member of the Montgomery County Detective Bureau, were voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(I). [Doc. No. 94].

[9] Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).

[10] Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).

[11] D.P. Enter. Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

4

constitutional violations without providing sufficient factual support.  To succeed on a claim of malicious prosecution, a plaintiff must first establish an underlying violation of a constitutional right.[12]  If the plaintiff establishes a constitutional violation, then he must also establish the elements of a Pennsylvania malicious prosecution claim, which requires a showing that: 1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice.[13]

Plaintiff's Amended Complaint alleges Defendants initiated a frivolous criminal lawsuit against her by bribing inmates to fabricate accusations of sexual misconduct and file a criminal action against her therefor, in retaliation to her filing a PHRC/EEOC administrative complaint against Defendant Algarin.  In support of her malicious prosecution claim, Plaintiff alleges that Defendants' provocation of a false criminal lawsuit violated her rights under the First, Fourth, Fifth,[14] and Sixth Amendments to the Constitution.[15]  Therefore, the first question of law we must address is whether Plaintiff has pleaded sufficient facts to support the constitutional violations alleged in the Complaint.  We review in turn  Plaintiff's claims under each constitutional challenge asserted in Defendant's Partial Motion to Dismiss.

---

[12] E.g., Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 792 (3d Cir. 2000).

[13] Id.

[14] Plaintiff was precluded from asserting a violation of the Fifth Amendment on these grounds by the Court's August 20, 2007 Order, finding that the "Fifth Amendment's Due Process Clause applies only to actions of the federal government, not state officials."

[15] Defendant's Motion to Dismiss challenges Plaintiff's malicious prosecution claim arguing that a constitutional violation is not present under the First, Fourth, and Sixth Amendments.  Defendant's Motion does not address Plaintiff's malicious prosecution claim on the grounds of the Fourteenth Amendment.

1.  First Amendment

Defendant asserts that Plaintiff's malicious prosecution claim based on violation of the First Amendment should be dismissed because the Amended Complaint does not allege any protected-speech right that Defendants have violated.[16]  In her Response to Defendant's Motion, Plaintiff asserts that her administrative complaint concerning Defendant Algarin's abuse is protected by the First Amendment not only as expressive speech, but also as a petitioning activity.  It is well established that "[t]he protection [the First Amendment] affords . . . applies both to petitioning state agencies and to petitioning state courts."[17]  The Third Circuit has consistently held that suing an employer is protected activity as long as the petition is not frivolous or a "sham."[18]  Under a 12(b)(6) analysis, the Court must assume that Plaintiff's PHRC/EEOC administrative complaint was not frivolous or a sham, and Defendants have made no argument to that effect in any event.  Therefore, the Court is satisfied that the conduct at issue was protected by the First Amendment, and Plaintiff's allegations properly assert a First Amendment violation.

2.  Fourth Amendment

To establish an underlying violation of the Fourth Amendment, in addition to alleging the four prongs of a malicious prosecution claim outlined above, a Plaintiff must also allege that she suffered a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal

---

[16] Watters v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir. 1995).

[17] Herr v. Pequea Twp., 274 F.3d 109, 115 (3d Cir. 2001), overruled on other grounds.  This First Amendment protection is made applicable to the states by the Fourteenth Amendment.  See, e.g., Hague v. Comm. for Indust. Org., 307 U.S. 496, 531-32 (1939).

[18] E.g., Hill v. Borough of Kutztown, 455 F.3d 225, 242 n.24 (3d Cir. 2006) (citing Brennan v. Norton, 350 F.3d 399, 417 (3d Cir. 2003); San Filippo v. Bongiovanni, 30 F.3d 424, 434-43 (3d Cir. 1994)).

proceeding."[19]   The Amended Complaint alleges that Defendants initiated a criminal proceeding against Plaintiff without probable cause, as retaliation for her filing EEOC and PHRC complaints, and that the proceeding resolved in her favor.   The Third Circuit has found that pretrial custody and some "onerous types of pretrial, non-custodial restrictions" constitute a Fourth Amendment seizure.[20] Mere attendance at trial, however, "does not itself qualify as a Fourth Amendment seizure."[21] Plaintiff does not allege that she suffered any deprivation of liberty as a result of the criminal charges allegedly initiated by Defendants.   Plaintiff fails to allege she was detained for any period of time, restricted from liberty in any way, or even required to attend trial.   Therefore, Plaintiff's malicious prosecution claim based on violation of the Fourth Amendment must fail because she has not alleged all of the essential elements of this claim.

3.  Sixth Amendment

In criminal proceedings, the Sixth Amendment guarantees accused individuals the rights to a speedy trial by an impartial jury, to be informed of the nature and cause of the accusation, to be confronted with opposing witnesses, to have compulsory process to obtain witnesses, and to effective assistance of counsel.[22]   The Amended Complaint further alleges that Defendants refused to produce exculpatory evidence in their possession in the form of documents and witnesses, and that Plaintiff was suspended and eventually terminated from her employment pending the outcome of the criminal proceeding.   The only possible Sixth Amendment assertion the Court can discern from

---

[19] Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

[20] Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).

[21] Id.

[22] U.S. Const. Amend. VI.

Plaintiff's allegations is that her right to compulsory process to obtain witnesses in her favor was violated by Defendants' intimidation of witnesses that could help her defense. The Supreme Court has held that "more than mere absence of testimony is necessary to establish a violation of the [Sixth Amendment] right."[23] Interpreting the specific right afforded by the Sixth Amendment, the Court explained, " the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining witnesses in his favor.'"[24] Plaintiff does not allege that Defendants' conduct denied her the right to subpoena witnesses in her favor; rather, she alleges Defendants engaged in a scheme to encourage witnesses not to participate in her criminal proceeding. These allegations do not assert that Defendants precluded her from her constitutional right to compulsory process.

Aside from the compulsory process theory, the Third Circuit has held facts similar to these insufficient to support a Sixth Amendment malicious prosecution claim.[25] In Merkle v. Upper Dublin School District, the plaintiff alleged deprivation of liberty by the prosecution of a criminal matter against her because she had to attend trial and because her job was placed in jeopardy as a result of being charged with a crime of moral turpitude.[26] The Third Circuit held that plaintiff's malicious prosecution claims did not "even arguably afford[] the protection Merkle assert[ed]" under the Sixth Amendment.[27] The Merkle Court listed the rights guaranteed by the Sixth Amendment,

---

[23] United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982) (citing Washington v. Texas, 388 U.S. 14 (1967)).

[24] Id. (quoting U.S. Const. Amend. VI.).

[25] Merkle, 211 F.3d at 792.

[26] Id.

[27] Id.

and found that none of those rights protected her from the harm she alleged, as explained above. Similarly, even viewing the facts here in the light most favorable to the Plaintiff, while the Amended Complaint depicts a disturbing set of circumstances for which legal redress should be sought, they do not identify a violation of rights protected by the Sixth Amendment, so this claim must fail.

## C.  Section 1983 Claim

Plaintiff seeks relief under 42 U.S.C. § 1983, alleging that Defendant Montgomery County should be liable for Defendants Algarin and Roth's wrongdoing.  In order to establish a claim under § 1983, a plaintiff must demonstrate the violation of a right secured by the Constitution or the laws of the United States, which was committed by a person acting under color of state law.[28]  It is well established that an employer is not liable under the theory of respondeat superior for damages caused by its employee(s) under § 1983.[29]  Referred to as a Monell claim, a municipality "can only be found liable under § 1983 where the municipality itself causes the constitutional violation at issue."[30]  To properly assert a Monell claim, a plaintiff must identify an official policy or custom of the municipality and then show that the execution of that policy deprived him of a right protected by the Constitution.[31]  The United States Supreme Court has recognized three ways in which municipal liability can be established under § 1983, namely where: 1) a municipal employee acts pursuant to a formal government policy or standard

---

[28] E.g., West v. Atkins, 487 U.S. 42, 47-49 (1988).

[29] Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694-95 (1978).

[30] City of Canton v. Harris, 489 U.S. 378, 385 (1989).

[31] E.g., Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).

operating procedure, which is long accepted within the government entity;[32] 2) the accused individual has final policymaking authority rendering his or her behavior an official act of government;[33] or 3) an official with policymaking authority ratifies the unconstitutional actions of a subordinate, rendering the behavior official for the purpose of liability.[34]

      Plaintiff asserts that Roth and Algarin, Warden and Deputy Warden of MCCF respectively, were policymakers for Montgomery County who "had the power and authority to hire, fire and change working conditions."[35]   The Amended Complaint further asserts that Roth and Algarin had actual knowledge of the violations of her rights, but neglected to prevent the wrongful acts when they had the power to do so.   Drawing all reasonable inferences from the facts alleged in the Amended Complaint, we read Plaintiff's allegations as an assertion that Defendants Roth and Algarin's conduct makes Montgomery County liable under the second and third theories of liability outlined above.

      The first question the Court must answer is whether Defendants Roth and Algarin were policy makers on behalf of Montgomery County for the purposes of a § 1983 claim. Whether an official has policymaking authority is a question of state law.[36]   Applying Pennsylvania law, cases in this district have consistently held that wardens of county correctional

---

[32] Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989).

[33] Pembaur v. Cincinnati, 475 U.S. 469, 480-81 (1986).

[34] City of St. Louis v. Praprotnik, 485 U.S. 112, 123-24 (1988).

[35] Pl.'s Resp. to Def.'s Mot. to Dismiss at 12.

[36] Praprotnick, 485 U.S. at 123.

10

facilities do not have final policymaking authority.[37]  Specifically, the case of <u>Cortlessa v. County of Chester</u> found that the plaintiff's allegations that the warden of Chester County Prison supervised prison officers was not enough to make him a policymaker.[38]  The <u>Cortlessa</u> Court reasoned that "the mere fact that Warden Masters, as a part of his duties, supervised prison officers is, by itself, insufficient to confer 'policymaker' status."[39]  Plaintiff's allegation that Defendants Roth and Algarin had the authority to hire, fire and change working conditions essentially asserts the same grounds for § 1983 municipal liability as the plaintiff in <u>Cortlessa</u>.  It follows, therefore, that Defendants Roth and Algarin did not have policymaking authority for Montgomery County.

After finding that Defendants Roth and Algarin did not possess policymaking authority under § 1983, it is no longer necessary to analyze Plaintiff's claims under the theory that Defendants Roth and Algarin ratified the wrongful conduct of their subordinates because this claim cannot survive unless a policymaker is identified.  Additionally, nowhere in the Amended Complaint, or any of Plaintiff's pleadings for that matter, does Plaintiff identify any specific policy of Montgomery County that Defendants carried out to her detriment; and even if she had identified a policy, Plaintiff fails to properly allege a causal link between the specific policy and the injuries she suffered.  For all of these reasons, Plaintiff fails to allege a <u>Monell</u> claim for

---

[37] <u>Cortlessa v. County of Chester</u>, No. 04-1039, 2006 WL 1490145, at *8 (E.D. Pa. May 24, 2006) (holding that the warden of Chester County Prison was not a policymaker for the purposes of § 1983); <u>Kis v. County of Schuylkill</u>, 866 F. Supp. 1462, 1480-81 (E.D. Pa. 1994) (holding that the warden of Schuylkill County Prison did not have final policymaking authority under Pennsylvania law); <u>Newkirk v. Sheers</u>, 834 F. Supp. 772, 786 (E.D. Pa. 1993) (same); <u>Plunto v. Wallenstein</u>, No. 84-1854, 1989 WL 95390, at *3 (Aug. 10, 1989) (holding that the Bucks County Board of Prisons was the policymaker for purposes of § 1983 because the warden's decisions were not final until ratified by the Board).

[38] 2006 WL 1490145, at *8.

[39] <u>Id.</u>

municipal liability, and therefore, her § 1983 claim fails.

**D.  Claims Under Sections 1985 and 1986**

Defendant asserts that Plaintiff has failed to allege facts sufficient to establish a claim under 42 U.S.C. § 1985.  The Amended Complaint asserts that Defendants intimidated witnesses to discourage them from testifying on Plaintiff's behalf in the criminal matter initiated against her.  Plaintiff seeks relief for the alleged intimidation under §§ 1985(2) & (3).  We will address the claims under each section in turn.

1.  Section 1985(2) Claim

To establish a claim under § 1985(2), a plaintiff must allege one of the statute's two bases for recovery: 1) conspiracy to "deter by force, intimidation or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein . . . ."; or 2) conspiracy with the purpose of "impeding, hindering, or obstructing, or defeating in any manner, the due course of any justice in any State or Territory, with intent to deny any citizen the equal protection of the laws."[40]  We read Plaintiff's claim here as a claim under both portions of § 1985(2).

With respect to the first half of § 1985(2), seeking recovery for intimidation of witnesses, the Amended Complaint asserts, "[v]arious agents of Mont[gomery County], and/or others working on its behalf and behest visited likely defense witnesses in the criminal case [against Plaintiff], and warned those witnesses to 'stay out of the Mayfield matter,"[41] and that "[t]his intimidation of witnesses was a clear violation of Mayfield's constitutional rights, a clear

---

[40] 42 U.S.C. § 1985(2).

[41] Am. Compl. ¶ 30.

violation of 42 U.S.C. § 1985(2) & (3)."[42]   The essential elements of a § 1985(2) claim of witness

intimidation are: 1) a conspiracy between two or more persons; 2) to deter a witness by force,

intimidation or threat from attending court or testifying freely in any pending matter; which 3)

results in injury to the plaintiff.[43]   Plaintiff's allegations, quoted above, asserting that Defendants

Roth and Algarin conspired to obstruct justice by intimidating potential MCCF inmate witnesses

not to testify on Plaintiff's behalf in the criminal suit against her allege sufficient facts to survive

a 12(b)(6) motion to dismiss.   To establish a claim for obstruction of justice under the latter

portion of § 1985(2), plaintiff must allege a "class-based, invidiously discriminatory animus" as

an essential element of this claim.[44]   In addition to the allegations of obstruction of justice quoted

above, the Amended Complaint also asserts that Defendants conspired to injure, oppress, and

intimidate Mayfield because of her sex.   The Court is satisfied that Plaintiff has established the

requisite class-based discriminatory animus required to make out a § 1985(2) obstruction of

justice claim, and it therefore survives the motion to dismiss.

> 2.  Section 1985(3) Claim

We now turn to the § 1985(3) claim based on the same intimidation of witnesses

theory underlying Plaintiff's § 1985(2) claim above.   Section 1985(3) prohibits actions taken "for

the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities under the laws."[45]   To state a viable

---

[42] Id.

[43] Malley-Duff & Assocs. v. Crown Life Ins. Co., 792 F.2d 341, 356 (3d Cir. 1986).

[44] People ex rel. Snead v. Kirkland, 462 F. Supp. 914, 920-21 (E.D. Pa. 1978) (quoting Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976)).

[45] 42 U.S.C. § 1985(3).

claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person, property, or the deprivation of any right.[46]  The Third Circuit has explained that "a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."[47]  The Amended Complaint alleges that "Defendants Algarin [and] Roth . . . conspired to injure, oppress, and intimidate Mayfield because of her sex, abridging Mayfield's rights by taking part and implementing the illegal acts specified in paragraphs 20-27, and 29 and 30,"[48] which describe an invidious scheme to injure Plaintiff by filing a false criminal lawsuit against her, bribing witnesses to fabricate charges and intimidating witnesses from testifying in her defense.[49]  Viewing the facts in the light most favorable to Plaintiff, we find that she has properly alleged a § 1985(3) claim.  Therefore, Plaintiff's § 1985(3) survives Defendants' Motion to Dismiss.

> 3.  Section 1986 Claim

In order to make out a claim under § 1986, the companion statute to § 1985, an underlying § 1985 claim must be successfully alleged as a prerequisite.[50]  Defendant's Motion to Dismiss argues that Plaintiff's § 1986 claim should be dismissed solely because she failed to

---

[46] Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

[47] Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006).

[48] Am. Compl. ¶ 32.

[49] Id. ¶¶ 20-30.

[50] E.g., Coggins v. McQueen, 447 F. Supp. 960, 966 (E.D. Pa. 1978).

establish a viable § 1985 claim.  Because we disagree with Defendant and find that Plaintiff has established a viable § 1985(2) conspiracy claim, we reject Defendant's § 1986 argument. Additionally, § 1986 provides a cause of action against any person who, having knowledge of a conspiracy actionable under § 1985, and with the power to prevent or aid in the prevention thereof, fails to do so.[51]  Plaintiff's allegation that Defendants Roth and Algarin "had actual knowledge of the discrimination and violations of Mayfield's rights, perpetrated by each other and their subordinates, but neglected and failed to prevent such wrongful acts when they had the power to do so,"[52] is sufficient to survive a 12(b)(6) dismissal of this claim.

## III.    CONCLUSION

Accepting as true all allegations in the Complaint and making all reasonable inferences that can be drawn therefrom, and after viewing the facts in the light most favorable to the Plaintiff, the Court finds that no relief could be granted under any set of facts that could be proved in support of her claims of malicious prosecution based on violations of the Fourth and Sixth Amendments, or of her § 1983 claim, and Defendants' Motion to Dismiss will be granted on these claims.  The Court holds that Plaintiff has alleged sufficient facts to support her claims of malicious prosecution based on violation of the First Amendment, § 1985(2) claims of witness intimidation and obstruction of justice, and her § 1986 claim, and Defendants' Motion to Dismiss will be denied on these claims.

An appropriate Order follows.

---

[51] 42 U.S.C. § 1986.

[52] Am. Compl. ¶ 33.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EILEEN MAYFIELD,                              )
                                              )
                              Plaintiff,      )
                                              )
                v.                            )            CIVIL ACTION
                                              )            No. 03-cv-2234
                                              )
MONTGOMERY COUNTY                             )
CORRECTIONAL FACILITY, et al.,                )
                                              )
                              Defendants.     )
_____

**ORDER**

       **AND NOW**, this 2nd day of July, 2008, upon consideration of Defendants' Partial

Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure

12(b)(6) [Doc. No. 87], and Plaintiff's Response in Opposition [Doc. No. 92], it is hereby

**ORDERED** that Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**, as

follows:

    1.     Plaintiff's malicious prosecution claim based on violations of the Fourth and

             Sixth Amendments (Count I) are **DISMISSED** with prejudice, and Plaintiff's

             malicious prosecution claims based on the First and Fourteenth Amendments

             remain;

    2.     Plaintiff's claim against Montgomery County under 42 U.S.C. § 1983 is

             **DISMISSED** with prejudice;

    3.     Defendant's Partial Motion to Dismiss with respect to Plaintiff's claims under 42

             U.S.C. § 1985(2) is **DENIED**;

4.    Defendant's Motion with respect to Plaintiff's claims under 42 U.S.C. § 1985(3)

       is **DENIED**;

5.    Defendant's Motion with respect to Plaintiff's claims under 42 U.S.C. § 1986 is

       **DENIED**; and

6.    Plaintiff's Request for Leave to Amend its Complaint, made for the first time in

       its Response to Defendant's Motion, is **DISMISSED AS MOOT**.

       It is so **ORDERED**.


                                          **BY THE COURT:**

                                          **/s/ Cynthia M. Rufe**
                                          _____
                                          **CYNTHIA M. RUFE, J.**

17